No. 38.—MICHAEL FITZGERALD, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant.

[1.] Where the Court, during the progress of a trial, remarked in the presence and hearing of the Jury, that the answers of a witness elicited on cross-examination, "did not amount to anything anyhow:" *Held,* that inasmuch as the evidence was *entirely irrelevant* to the issue before the Court, that the judgment would not be reversed, under the provisions of the Act of 1850.

[2.] Where W. and F. had a quarrel, and W. swore *positively* that he saw F. have a pistol in his pocket, and H. a witness, who was also present at the same time, swore that he did not see F. have any pistol, and that he looked attentively and closely, to see if he could see any thing of the sort, and must have seen it if one had come out of F.'s pocket: *Held,* that both witnesses may have sworn truly, and that it was not the duty of the Court to impute perjury to either; that under the particular circumstances of the case, the preponderance of the evidence was in favor of the *positive* testimony of W. whose attention was excited by the quarrel, and directed towards the weapon, and that the Court did not err, in so charging the Jury.

Indictment, in Bibb Superior Court.   Tried before Judge Powers.   June Term, 1852.

This was an indictment for unlawfully carrying a deadly weapon.

The sole witness on behalf of the State, was the prosecutor, who testified that defendant came to his house, and entered into a quarrel with him; that during the quarrel, he charged defendant with having a pistol in his breeches pocket; defendant denied it; withdrew his hand from his pocket, and slapping the outside of his pocket, said he had money there; when defendant drew his hand out of his pocket, prosecutor saw the muzzle of a pistol concealed in it.

On cross-examination, the witness said he saw the barrel and lock of the pistol; it was drawn out to the guard; witness was asked by defendant's counsel, how came defendant to come to his house; to which the Sol. General objected.

The Court overruled the objection, saying that it " did not amount to any thing any way;" that the question was irrelevant, but he would allow it, to save time.   This remark of the Court, in the hearing of the Jury, is one of the grounds of error now taken.

The defendant introduced a witness named Harrington, who testified that he was present during the whole quarrel—was noticing the parties, and saw no appearance of a pistol; though when they spoke of it in their controversy, and defendant denied having one, he noticed closely, to see if he did have one. Witness was positive that if the defendant had had a pistol, he should have seen it.   The testimony of these two witnesses made up the case, on both sides.

The defendant's counsel requested the Court to charge, that, under the circumstances of this case, the testimony of Harrington was not to be considered as negative entirely; but, that from his position, means of knowing, &c. his evidence was entitled to the same force as the positive testimony of the prosecutor.

This charge the Court refused to give, but remarked to the

Jury, that it was impossible to keep lawyers to the track; that the cause of quarrel between prosecutor and defendant, was wholly extraneous; that the only question was whether defendant had the pistol; that they must weigh and pass upon the evidence, and that the general rule was, that the testimony of a positive witness, should out-weigh that of a negative one; which doctrine the Court went on to illustrate. The Jury found defendant guilty.

To these several rulings of the Court, defendant's counsel excepted.

HALL & HALL, for plaintiff in error.

DeGRAFFENRIED, Solicitor General, for defendant.

*By the Court.*—WARNER, J. delivering the opinion.

[1] The first ground of error taken in the record is, that the Court stated, in the presence and hearing of the Jury, during the progress of the trial, that the testimony of Wright, elicited by the cross-examination, " did not amount to anything, any how." This expression of opinion, by the Court, as to the *effect* of the testimony, is entirely irregular and improper, especially in view of the provisions of the Act of 1850. The testimony is either competent, or it is not. If *incompetent,* it is the duty of the Court to repel it; if *competent,* the parties are entitled to have the full benefit of it before the Jury, without disparagement from the Court. The testimony, however, was entirely irrelevant to the issue, and the supposed disparagement of it by the Court, did not injure the defendant, and on that account, he is not entitled to a reversal of the judgment.

[2] The issue was, whether the defendant had a pistol about his person, in violation of the deadly weapon Act.

The prosecutor swore *positively* that he had, and that he *saw* it, during the quarrel between himself and the defendant. Harrington, a witness examined for the defendant, states he was present at the quarrel—saw no pistol—looked attentively,

and closely, to see if he could see anything of the sort, and must have seen it, if defendant had it about his person at that time.    Upon this state of facts, the Court was requested to charge the Jury, that if the prosecutor had sworn *falsely,* in any one particular, connected with the transaction, they must discredit him wholly, and that Harrington was not to be considered a mere *negative* witness, &c.,. but was to be regarded as a *positive* witness, and to be credited according to his means of observation, &c.    The Court refused to instruct the Jury, as requested, and in our judgment, very properly so refused.    There is no evidence in the record, that would authorize the Court to *assume* the prosecutor had sworn *falsely,* in any one particular; and if he had so charged the Jury, it would have been error, according to the repeated adjudications of this Court.    Neither ought the Court to have assumed that Harrington was a positive and not a negative witness, contrary to the general rule of evidence.    The prosecutor saw a pistol on the person of the defendant at the time of the quarrel, and the witness did not.    The testimony of both witnesses is reconcileable, and both may have sworn truly.    It was not the duty of the Court to impute perjury to either, or to insinuate any such thing, in its charge to the Jury.

Here there was room for Harrington to have been mistaken, and he was more likely to have been mistaken than the prosecutor.    During the altercation between the prosecutor and the defendant, his attention would more likely be directed towards a weapon in his adversary's possession, than the witness, who was standing by, taking no part in the quarrel.    His personal safety would naturally direct his attention to look out for a weapon, while the witness would not have had any such motive.    In such cases, the weight of evidence preponderates in favor of the *positive* testimony.    1 *Starkie's Ev.* 518.    This principle was fully recognized by this Court, in *Matthews vs. Poythress,* 4 *Geo. Rep.* 287.    The charge of the Court to the Jury was in conformity with this principle, in which we find no error.

It is, however, insisted, that the Court erred in charging the Jury, "that it was impossible to keep lawyers to the track, in

the examination of witnesses, and in argument." It is doubt-less the duty of the Court, to confine the counsel to the law and the testimony; to the discharge of their appropriate duties, during the progress of the cause; and for that purpose, the law has clothed it with ample *authority*, but we do not so readily perceive why their conduct should be made the subject matter of complaint to the Jury. The Court ought to regulate the con-duct of the counsel, if necessary, *independent of the Jury.* How-ever, as we consider this ground of complaint more as a matter of *taste,* on the part of the Court, than an error of law, we shall not reverse the judgment on that ground. Let the judgment of the Court below be affirmed.